IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge John L. Kane

Civil Action No. **09-cv-01272-JLK**

**COLORADO WILD, a Colorado non-profit corporation, and
WILDEARTH GUARDIANS, a New Mexico non-profit corporation**,

      Petitioners,

v.

**TOM VILSACK, in his official capacity as the Secretary of Agriculture,
THOMAS TIDWELL, in his official capacity as the Chief Forester of the U.S. Forest
Service,
THOMAS MALECEK, in his official capacity as District Ranger for the Rio Grande
National Forest, and
UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture,**

      Respondents.

---

**MEMORANDUM OPINION AND ORDER**

---

Kane, J.

Located in south-central Colorado, Handkerchief Mesa comprises nearly 92,000 acres in the Rio Grande National Forest and contains three of the Rio Grande's primary watersheds: Pass Creek, Park Creek, and Beaver Creek, as well as part of the South Fork of the Rio Grande River. From the late-nineteenth through the mid-twentieth century the area was managed to maximize the extractive value of resources, and as a result it was heavily logged. Massive clearcuts denuded significant portions of the area, resulting in detrimental impacts to the area's soil and negative impacts to watersheds. With the passage of the Multiple Use – Sustained Yield Act of 1960 and the National Forest Management Act ("NFMA"), management priorities shifted and logging is no longer the primary activity in the area. Recreational uses have begun to

1

predominate, and Handkerchief Mesa has become prized by outdoor enthusiasts for its myriad fishing, hunting, hiking, skiing, and sightseeing opportunities. Despite this shift in management priorities, Handkerchief Mesa is not subject to any extraordinary protections and is instead managed in accordance with the Land Resource Management Plan of the Rio Grande National Forest which balances recreational and extractive uses in accordance with the multiple-use mandate of the Multiple Use – Sustained Yield Act of 1960 and the National Forest Management Act ("NFMA").[1]

The Forest Service has proposed a timber sale in Handkerchief Mesa authorizing logging on approximately 3,436 acres over a five year period, 10.8 miles of road reconstruction, 44.0 miles of road maintenance, and 0.2 miles of temporary road construction. The anticipated impacts of this timber sale are anathema to Colorado Wild and WildEarth Guardians ("Petitioners"), who are concerned that the project will significantly impact and degrade the natural environment. In an effort to forestall these impacts, Petitioners have brought suit in this Court, alleging multiple violations of NFMA, as well as a failure to comply with the procedural safeguards of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq*. The matter is currently before me on Respondents' Motion to Strike (Doc. 25). For the reasons stated

---

[1] The Multiple Use – Sustained Yield Act states, "the national forests are established and shall be administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes." 16 U.S.C. § 528. NFMA, in turn, requires national forests to develop resource management plans which are to be "based on a comprehensive assessment of present and anticipated uses, demand for, and supply of renewable resources from the Nation's public and private forests and rangelands, through analysis of environmental and economic impacts, coordination of multiple use and sustained yield opportunities as provided in the Multiple-Use Sustained-Yield Act of 1960, and public participation in the development of the program." 16 U.S.C. § 1600(3).

below, Respondents' motion is GRANTED in part and DENIED in part.

JURISDICTION AND VENUE

As the United States Government is a defendant to this action, and it arises under the federal laws of the United States, I have jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346. Venue lies in this judicial district by virtue of 28 U.S.C. § 1391(e) because the events or omissions out of which these claims arise took place in this district.

LEGAL STANDARDS

Petitioners challenge the Respondents' actions under NFMA and NEPA. As the Respondents note, these statutes fail to define or specify the standard of review to be used in examining the Forest Service's actions, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 500, *et seq.*, provides the framework for this appeal. Accordingly, I must apply the standards articulated in the APA in considering the merits of Respondents' Motion to Strike.

*Judicial Review of Informal Rulemaking under the APA*

Under the APA, I review Respondents' informal rulemaking to determine if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As the Supreme Court held in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971), "the generally applicable standards of § 706 require the reviewing court to engage in a substantial inquiry." *Id.* at 415. At the same time, however, the Supreme Court acknowledged, "the Secretary's decision is entitled to a presumption of regularity." *Id.* The Court emphasized, however, that the "presumption is not to shield [the Secretary's] action from a thorough, probing, in-depth review." *Id.* The tension inherent in these mandates is revealed by the Court's own declaration that though "this inquiry into the facts is to be searching and careful, the ultimate

standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.* at 416.

In conducting my review of Respondents' actions, I must balance these mandates. In order to afford appropriate deference, I review the administrative agency's decision as an appellate body. S*ee Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994). As a result, I apply the Federal Rules of Appellate Procedure and, generally, limit my review to the evidence relied upon by the Respondents in reaching the challenged decision.[2] *Id.* at 1580. In order to ensure a "substantial inquiry," however, I also apply a variety of rules and exceptions consistent with my responsibility to ensure meaningful judicial review. Most relevant to the instant controversy, I apply this general framework to the process of determining the sufficiency of the Administrative Record submitted by Respondents.

*Judicial Review of the Sufficiency of the Administrative Record*

The APA directs that "the court shall review the whole record or those parts of it cited by a party . . .." 5 U.S.C. § 706. The definition of what exactly constitutes the "whole record" is not entirely clear, but in *Overton Park* the Supreme Court directed lower courts to confine their review of agency decisions to "the full administrative record that was before the Secretary at the time he made his decision." *Id.* at 420. The Court clarified this mandate in *Camp v. Pitts*, 411 U.S. 138 (1973), stating that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id.* at 142; *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985)("The task of the

---

[2] Petitioners argue that *Olenhouse* should be limited in scope, and I should adopt a hybridized approach using both the Federal Rules of Appellate Procedure and the Federal Rules of Civil Procedure. As discussed *infra* at 12, I reject this view.

reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court").

In accordance with my role in reviewing agency action under § 706, I begin my review of the sufficiency of the submitted Administrative Record by applying a "presumption of regularity" to the record as it is designated by the agency. In order to ensure a "probing inquiry" and a "thorough, probing, in-depth review," however, I also consider the exceptions by which Petitioners may prove the insufficiency of a record as designated by the agency and introduce additional documentation and evidence. Though courts differ in their formulation and application of these exceptions,[3] such documentation and evidence generally takes two distinct, yet often confused, forms: (1) materials which were actually considered by the agency, yet omitted from the administrative record ("completing the record"); and (2) materials which were not considered by the agency, but which are necessary for the court to conduct a substantial inquiry ("supplementing the record").[4] In the instant controversy, Petitioners seek to "supplement the

---

[3] As illustration of the different approaches taken by lower courts in conducting review under § 706, *compare Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 444 (7th Cir. 1990) ("Confining the district court to the record compiled by the administrative agency rests on practical considerations that deserve respect. Administrative agencies deal with technical questions, and it is imprudent for the generalist judges of the federal district courts and courts of appeals to consider testimonial and documentary evidence bearing on those questions unless the evidence has first been presented to and considered by the agency") *with Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980)("The court cannot adequately discharge its duty to engage in a 'substantial inquiry' if it is required to take the agency's word that it considered all relevant matters").

[4] Such confusion has significant consequences for courts and litigants. There are meaningful differences between the standard for establishing that an agency should be required to "complete the record" with documents it actually considered versus the showing required to establish that a court should "supplement the record" with materials which were not before the agency when it made the challenged decision. For an excellent discussion of the differences between "completing the record" and "supplementing the record" see *Cape Hatteras Access*

record" with the Declaration of Dr. Arthur D. Partridge (Doc. 24-3). In order to determine the admissibility of this extra-record evidence, it is necessary to determine whether it fits within one of the limited exceptions permitting supplementation of the record.

*Supplementing the Record*

Consistent with the "presumption of regularity" noted above, I am generally reluctant to allow parties to supplement the record with evidence not considered by the agency in reaching its challenged decision. As the D.C. Circuit has noted, "To review more than the information before the Secretary at the time she made her decision risks our requiring administrators to be prescient or allowing them to take advantage of post hoc rationalizations." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984). Despite my general reluctance, however, I must consider the exceptions which allow a party to introduce extra-record evidence. Though these exceptions are grounded in the Supreme Court's ruling in *Overton Park*, which allowed lower courts to conduct some form of *de novo* review "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate . . . [and] when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action . . .," 401 U.S. at 415, they have taken on a life of their own.

As two commentators argued nearly fifteen years after the Court's decision in *Overton Park*, "courts have developed so many unwritten exceptions to the doctrine of record review, that

---

*Pres. Alliance v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111 (D.D.C. 2009). Perhaps unnecessarily contributing to the confusion, I use terminology conflicting with the *Cape Hatteras* court (what I term "completing the record," the *Cape Hatteras* court refers to as "supplementing the record;" what I term "supplementing the record," the *Cape Hatteras* court refers to as "going beyond the record"). It is my belief, however, that the terminology used in this opinion is most logically consistent with the underlying differences and has the greatest promise of eliminating any confusion.

6

industrious advocates now can introduce any evidence they choose in cases reviewing informal administrative action." Steven Stark and Sarah Wald, *Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action*, 36 Admin. L. Rev. 333, 336 (1984). Though this proclamation is arguably overstated,[5] the truth remains that courts have expanded the exceptions under which they will allow parties to supplement the record upon judicial review. *See, e.g.*, *American Mining Cong. v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985)(citing six exceptions); *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989)(citing eight exceptions); *but see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009)(questioning the validity of *Esch*).

Unfortunately, lower courts have failed to articulate coherently and consistently the exceptions which justify supplementation of the record. For example, though the 10th Circuit recognized five possible exceptions in *Custer County Action Ass'n v. Garvey*, 256 F.3d 1024, 1028 n.1 (2001)(quoting *American Mining Cong.*, 772 F.2d at 626, and listing possible justifications as: (1) the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) the record is deficient because the agency ignored relevant factors it should have considered in making its decision; (3) the agency considered factors that were left out of the formal record; (4) the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; and (5) evidence coming into existence after the agency acted demonstrates the actions

---

[5] For a critique of the overly expansive view of Stark and Wald, *see* Gordon G. Young, *Judicial Review of Informal Agency Action on the Fiftieth Anniversary of the APA: The Alleged Demise and Actual Status of* Overton Park's *Requirement of Judicial Review "On the Record,"* 10 Admin. L.J. Am. U. 179 (1996). Notably, though Young generally criticizes the exceptions cited by Stark and Wald, he acknowledges the potential validity of the NEPA exception. *Id.* at 227.

were right or wrong), it listed only two exceptions in *Lee v. U.S. Air Force*, 354 F.3d 1229, 1242 (2004)(citing *American Mining Cong.*, 772 F.2d at 626, and noting that supplementation was appropriate "where the agency ignored relevant factors it should have considered or considered factors left out of the formal record").[6][7] Though these decisions are not necessarily incongruous, the failure to articulate consistently and comprehensively the exceptions contributes to confusion on the part of litigants and the District judges who are often uncertain how many exceptions exist and what exactly the exceptions are. *See, e.g., S. Utah Wilderness Alliance v. Thompson*, 811 F. Supp. 635, 643, n.4 (D. Utah 1993)("The court should not consider material outside the record unless it falls into one of three exceptions: (1) if the material explains technical information in the record; (2) if the agency failed to consider relevant evidence; or (3) if the agency, in bad faith, failed to include information in the record. If there are gaps in the record, the court should remand for further consideration")(citations omitted).

---

[6] Such confusion is not exclusive to the 10th Circuit. *Compare Esch*, 876 F.2d at 991 (Exceptions include, "(1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage") *with IMS v. Alvarez*, 129 F.3d 618, 624 (1997)(seeming to find that exceptions exist only upon a showing that (1) the agency failed to examine all relevant factors; (2) the agency failed to explain adequately its grounds for decision; or (3) the agency acted in bad faith or engaged in improper behavior in reaching its decision).

[7] Both of these opinions include an exception where an agency considers factors which it left out of the Administrative Record. Such evidence, however, should be considered "completing the record." As such, in order to reduce the likelihood of confusion, it should not be listed under the exceptions under which parties may "supplement the record." For more discussion of the problems related to confusion between the terminology and standards relating to the admission of these two different forms of evidence, *see supra* n. 4.

8

It is not my province to articulate the standard governing the admission of extra-record evidence throughout this Circuit. I note this confusion, however, in hoping that the 10th Circuit will grasp the nettle and provide a clear articulation of the exceptions allowing District Courts in this circuit to supplement the Administrative Record with extra-record evidence. Having noted this confusion, and entered my plea for clarity, I now turn to the exception most relevant to this case – the "NEPA exception."

Though only tacitly acknowledged in the 10th Circuit, *see Lee*, 354 F.3d at 1242, the NEPA exception has been explicitly recognized both by other circuits, *see, e.g.*, *Esch*, 876 F.2d at 991; *Suffolk v. Sec. of Interior*, 562 F.2d 1368, 1384-85 (2d Cir. 1977); *Save our Ten Acres v. Kreger*, 472 F.2d 463, 467 (5th Cir. 1973), and commentators alike, *see, e.g.*, Steven Stark and Sarah Wald, *Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action*, 36 Admin. L. Rev. 333, 351-53 (1984); Gordon G. Young, *Judicial Review of Informal Agency Action on the Fiftieth Anniversary of the APA: The Alleged Demise and Actual Status of* Overton Park's *Requirement of Judicial Review "On the Record,"* 10 Admin. L.J. Am. U. 179, 227 (1996). This exception is based on a crucial distinction between judicial review of <u>substantive</u> agency decisions and judicial review of an agency's compliance with the <u>procedural</u> requirements of NEPA. *See Cape Hatteras Access Pres. Alliance*, 667 F. Supp. 2d at 115 (finding that the exceptions are "more appropriately applied in actions contesting the procedural validity of agency decisions"). As the 2nd Circuit noted in *Suffolk*, "in NEPA cases . . . a primary function of the court is to insure that the information available to the decision-maker includes an adequate discussion of environmental effects and alternatives, which can sometimes be determined only by looking outside the administrative record to see what the

agency may have ignored." 562 F.2d at 1384 (citations omitted).

Thus, the 10th Circuit has recognized the relevance of extra-record evidence in NEPA cases where there are gaps or inadequacies in the NEPA process. *See Citizens for Alternative to Radioactive Dumping v. U.S. Dep't of Energy*, 485 F.3d 1091, 1096 (10th Cir. 2007)(quoting *Lee*, 354 F.3d at 1242)("In dealing with scientific and technical evidence, extra-record evidence 'may illuminate whether an [environmental impact statement] has neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise swept stubborn problems or serious criticism . . . under the rug'")(alterations in original). Extra-record evidence which is actually a competing expert opinion, however, may not be admitted under the guise of the NEPA exception. *See Lee*, 354 F.3d at 1242 (finding that the submitted declaration was inadmissible under the NEPA exception because it presented an expert opinion).

ANALYSIS

In the instant case, Respondents argue that the Declaration of Dr. Arthur D. Partridge (Doc. 24-3) is inadmissible extra-record evidence. They first argue that the Declaration is submitted in violation of the Amended Joint Case Management Plan (Doc. 21) which required submission of motions to supplement the Administrative Record by Nov. 6, 2009. As Petitioners submitted the Declaration after the deadline, without a motion seeking leave to amend the record, Respondents argue it should be stricken. As a threshold matter, I acknowledge that the Amended Joint Cast Management Plan is not a model of clarity. Its reference to "supplementing the record" contributes to the parties' confusion, and has led both parties to debate whether the deadlines for filing motions to supplement the record applies to the extra-record evidence offered by

Petitioners. In light of this failure, I find it unfair to bar Petitioners' attempt to offer the Declaration of Dr. Partridge upon these procedural grounds.

Respondents also properly note, however, that my review is ordinarily restricted to the evidence and proceedings before the agency at the time it acted (the Administrative Record). Asserting that Petitioners have failed to establish any of the limited exceptions allowing supplementation of the record, Respondents argue that the Declaration is inadmissible. I find this argument unconvincing. As discussed above, by its very nature Petitioners' NEPA challenge is based not on the substantive accuracy of the Forest Service's environmental assessment, but on a procedural failure – the failure to consider the impacts of the spruce budworm. As noted above, the distinction between the procedural and the substantive is significant in this context. Though Respondents argue that Petitioners are merely "attempt[ing] to create a 'battle of the experts' regarding the budworm," they fail to recognize the importance of extra-record evidence in the NEPA context where a party challenges not the merits of the agency's decision, but the sufficiency of the process followed in reaching it.

As Dr. Partridge's Declaration seeks to illuminate a broad section of analysis that is wholly lacking in the record, I find that it is relevant to the review of the Forest Service's compliance with NEPA in the formulation of the Environmental Assessment for the Handkerchief Mesa project. As such, this declaration is admissible for purposes of supplementing the record within the scope of the NEPA exception. Consistent with the basis for the exception, however, this declaration is admissible only insofar as it tends to show either that the agency's analysis was clearly inadequate or that the agency improperly failed to set forth opposing views widely shared in the relevant scientific community. It is not, however, admitted for purposes of providing an

opposing expert opinion in opposition to the substantive result of the Respondents' NEPA process.

*Interpretation and Construction of Petitions for Review*

In their Motion to Strike (Doc. 25), Respondents also urge me to strike from Petitioners' Opening Brief the argument that Respondents violated NFMA by failing to adhere to stream health standards. As Petitioners failed to plead this argument specifically in their Petition for Review, Respondents assert that it has been waived. As a threshold matter, it is necessary to emphasize the rules which govern this proceeding. As the 10th Circuit directed in *Olenhouse*, "[r]eviews of agency action in the district courts must be processed as appeals," and "a district court should govern itself by referring to the Federal Rules of Appellate Procedure." 42 F.3d at 1580. Though Petitioners urge a limiting construction of this language, asserting that *Olenhouse* only addressed the manner of substantive review in which the district court engages, I find no reason to so limit the clear mandate articulated by the 10th Circuit.[8] Accordingly, I must judge the sufficiency of the Petition for relief under Federal Rule of Appellate Procedure 15(a)(2)(C) – not, as Petitioners argue, under Rules 8(e) and 15 of the Federal Rules of Civil Procedure.[9]

Rule 15(a)(2)(C) states that a party challenging an agency decision by submitting a petition for review "must . . . specify the order or part thereof to be reviewed." Failure to do so

---

[8] I recognize that two other district courts in this circuit have limited the scope of *Olenhouse* as Petitioners suggest. *See S. Utah Wilderness Alliance v. Norton*, 277 F. Supp. 2d 1169 (D. Utah 2003); *Lewis v. Glickman*, 104 F. Supp. 2d 1311 (D. Kan. 2000). As the author of *Olenhouse*, sitting by designation, I find no basis for the purported limitation.

[9] In making this finding, I acknowledge that there are meaningful differences between these rules which may in fact bear directly upon my decision of this motion. This result is not, however, unfair. It is entirely consistent with the appellate function of the court in this proceeding.

may result in dismissal. "A mistaken or inexact specification of the order to be reviewed will not be fatal to the petition, however, if the petitioner's intent to seek review of a specific order can be fairly inferred from the petition for review or from other contemporaneous filings, and the respondent is not misled by the mistake." *Entravision Holdings, LLC v. Fed. Commc'ns Comm'n*, 202 F.3d 311, 313 (D.C. Cir. 2000).

In their Petition for Review, Petitioners' articulate three distinct grounds for relief: (1) the decision fails to meet soil productivity and management standards; (2) the decision fails to assure adequate regeneration; and (3) the decision relies upon an inadequate environmental assessment. Petitioners' Opening Brief (Doc. 24), however, asserts a fourth ground for relief not specified in the petition: the decision fails to meet stream health standards. Respondents argue that this additional claim is barred by Rule 15, as it was omitted from the petition for review. The Petitioners acknowledge that they did not specifically plead the stream health argument as a distinct basis for relief; they argue, however, that this argument is encompassed in their first claim for relief.

As noted above, the failure to specifically include this claim in the petition is not necessarily fatal. If the claim can be fairly inferred from the petition for review or from other contemporaneous filings, it can be considered by the reviewing court. Though Petitioners do not specifically argue in accordance with this standard, I find their arguments regarding Fed. R. Civ. P. 8(e) informative. Petitioners argue that their stream health standards claim is "bound within the facts of the soil productivity claim," citing the fact that a failure to comply with requirements for preventing soil erosion and degradation in the project area will necessarily contribute to stream health impacts. Though this may be the case, this does not provide notice that Petitioners

13

intend to challenge the decision's compliance with a completely different set of standards. As Respondents note, Petitioners raised this claim at the administrative level and, for unknown reasons, chose not to challenge the appeal officer's decision in their petition for review. Quite the opposite of providing notice of the claim, this decision was actually an indication to Respondents that Petitioners were abandoning the claim. Perhaps most troubling, there is no mention in the petition of the stream health standards upon which Petitioners rely as the basis for their stream health standards argument. It is difficult to determine how the Respondents could fairly infer that Petitioners intended to challenge compliance with standards which they failed to articulate in their petition.

Despite their change of heart, Petitioners cannot now bootstrap this claim based on generic references to stream health in their first articulated claim for relief. As I find that a claim based on the failure to meet stream health standards could not be fairly inferred from the petition or any other contemporaneously filed documents, this argument shall be stricken in accordance with Rule 15(a)(2)(C).

CONCLUSION

The role of a court reviewing an agency decision under § 706 is necessarily limited. The agency's expertise must be acknowledged and its decisions given deference. Reviewing courts should not, however, abdicate their duty to engage in a substantial and meaningful review. Defendant's Motion to Strike directly implicates these theoretical concerns, and it is GRANTED in part and DENIED in part. I find the Declaration of Dr. Arthur D. Partridge (Doc. 24-3) is properly admitted for purposes of supplementing the Administrative Record. It is only relevant, however, insofar as it addresses the procedural deficiency of Respondent's NEPA compliance. I

also find Petitioners' claim that the Forest Service violated NFMA by failing to meet stream health standards is properly stricken, as it cannot be reasonably inferred from Petitioners' petition or any other contemporaneously filed documents.

Dated: March 25, 2010

**s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE