## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge William J. Martínez

Civil Action No. 09-cv-01272-WJM

ROCKY MOUNTAIN WILD, a Colorado non-profit corporation, and
WILDEARTH GUARDIANS, a New Mexico non-profit corporation,

        Petitioners,

v.

TOM VILSACK, in his official capacity as the Secretary of Agriculture,
TOM TIDWELL, in his official capacity as the Chief Forester of the U.S. Forest Service,
THOMAS MALECEK, in his official capacity as District Ranger for the Rio Grande
National Forest, and
UNITED STATES FOREST SERVICE, an agency of the U.S. Department of
Agriculture,

        Respondents.

---

### ORDER GRANTING ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 2412(d)(1)

---

This matter is before the Court on Petitioners Rocky Mountain Wild and

WildEarth Guardians' (collectively "Petitioners") Motion for Attorneys' Fees ("Motion").

(ECF No. 73.)  Respondent U.S. Forest Service, the Secretary of Agriculture, the Chief

Forrester of the U.S. Forest Service, and the District Ranger of the Rio Grande

National Forest (collectively "Respondents") oppose the Motions and have filed a

Response  (ECF No. 78).  Petitioners have filed a Reply (ECF No. 78).

For the reasons set forth below, the Court grants in part Petitioners' Motion

pursuant to 28 U.S.C. § 2412(d)(1).

## I. BACKGROUND

This case originally arises from a challenge to the U.S. Forest Service's approval of the Handkerchief Mesa Timber Project, which authorized logging in certain areas of the Rio Grande National Forest in southwestern Colorado.  (ECF No. 1). Petitioners filed a Petition for Review of Agency Action against Respondents on June 1, 2009.  (*Id.*)

On February 9, 2012, this Court issued an Order invalidating the Forest Service's Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI"),holding that these documents violated the National Forest Management Act ("NFMA") and the National Environmental Policy Act ("NEPA").  (ECF No. 53 at 22). Respondents filed a Notice of Appeal in April 2012, but voluntarily dismissed the appeal on September 18, 2012.  (ECF No. 57; ECF No. 63).

Petitioner's now moves the Court for Attorney's Fees pursuant to 28 U.S.C. § 2412(d)(1).  (ECF No. 53.)

## II. LEGAL STANDARD

The Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 directs a court to award reasonable attorney fees to a prevailing party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C.A. § 2412(d)(1)(A).

Even after the requirements of the EAJA are met, the party seeking fees must demonstrate that its request is reasonable.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  If a court ultimately determines that a party is entitled to an EAJA award, the court must then determine the reasonable number of hours spent on the litigation, and

multiply this figure by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433; *see also*

*Malloy v. Monahan*, 73 F.3d 1012, 1017 (10th Cir. 1996). A district court is obligated to

exclude "hours not 'reasonably expended' from the calculation"—including hours "that

are excessive, redundant, or otherwise unnecessary." *Id.*

### III.  ANALYSIS

### A.    Petitioners Are Entitled to an Award of Fees Under the EAJA

The EAJA permits eligible prevailing parties to recover "fees and other expenses

incurred by the party" involved in litigation with a federal agency.  *Richlin Sec. Servics*

*Co. v. Chertoff*, 553 U.S. 571, 573-574 (2008).  To be eligible for an award of fees: (i)

the party must be "prevailing"; (ii) the Government's position must not have been

"substantially justified"; and (iii) "special circumstances" making an award unjust may

not exist; and (iv) the fee request must be made within 30 days of entry of final

judgment, supported by an itemized statement.  *See Commissioner of the I.N.S. v.*

*Jean*, 496 U.S. 154, 158 (1990).  In addition, the party requesting fees must meet the

net-worth eligibility criteria set forth in 28 U.S.C. § 2412(d)(1)(D)(2)(B).

#### 1.    Petitioners Prevail on the Merits

A party is "prevailing" for EAJA purposes where that party has succeeded on

any significant issue in litigation and achieved benefit from bringing suit.  *See Shalala*

*v. Shaefer*, 509 U.S. 292, 302 (1993).   Here, Petitioner satisfies the first requirement

because of its success on the merits in this case—specifically, on February 9, 2012,

this Court issued an Order invalidating the Forest Service's  EA and FONSI, finding

that these documents violated the NFMA and NEPA.  (ECF No. 53 at 22).  Because

Petitioners received the relief they requested, they are prevailing parties within the

3

meaning of the EAJA.  *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001).

      2.      <u>Respondents' position must not have been "substantially justified"</u>

Since Petitioners are prevailing parties eligible for a fee award, Respondents' position must not have been 'substantially justified' in their litigation position.  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  *See* 28 U.S.C. § 2412(d)(1)(A).[1]  A position is substantially justified "if a reasonable person would think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 566 n.2.  *Hackett v. Barnhart*, 475 F.3d 1166, 1174 (10th Cir. 2007) (fees "generally *should* be awarded where the government's underlying action was unreasonable'); *see also San Luis Valley Ecosystem Counsel v. U.S. Forest Serv.*, 2009 WL 792257, at *2 (D. Colo. Mar. 23, 2009) (stating that "the burden is on the [government] to demonstrate that its position . . . was "justified to a degree that would satisfy a reasonable person," and that it "had a reasonable basis in law and fact").

Respondents contend that they reasonably believed it had properly analyzed, under the NFMA and NEPA, whether it complied with two forest plan standards regarding soil compaction and forest regeneration. (ECF No. 78 at 4.)  The Court

---

[1] A fee applicant need only allege that the government's position lacked substantial justification, and no court has ever suggested that anyone but the government bears the burden on the issue of substantial justification.  *See* 28 U.S.C. § 2412(d)(1)(B) (detailing the requirements of a fees motion and stating that "[t]he party shall also allege that the position of the United States was not substantially justified").  The Court finds that Petitioners have done this, and so the burden then lies with Respondents to prove that their position was "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce* 487 U.S. at 565.  *See San Luis Valley Ecosystem*, 2009 WL 792257, at *2 (stating that "the burden is on the [government] to demonstrate that its position . . . was "justified to a degree that would satisfy a reasonable person," and that it "had a reasonable basis in law and fact").

disagrees.  The reasons are four-fold.

*First,* the Court finds that Respondents' litigation position ran contrary to clear NFMA mandate.  Specifically, NFMA requires that all uses of managed land be consistent with forest plans.  16 U.S.C. § 1604(I); see also *Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 785 (10th Cir. 2006).  The applicable plan here—the Rio Grande National Forest Land and Resource Management Plan ("Forest Plan")—incorporated the Region 2 Soil Management Handbook's ("R2 Handbook") requirement that detrimentally compacted land in a managed area be limited to 15% of any land unit.  (ECF No 77 at 3.)

In light of the NFMA's mandate, the Court sides with Petitioner's argument because Respondents' decision, not to conduct soil-compaction analysis of *all* land units before approving the project, lacked legal merit. There was little (if any) justification for not including data on *all* areas.  To the extent that Respondents relied on *Lands Council v. McNair* in making the decision to approve the logging despite the lack of soil-compaction analysis for all areas, such reliance was misguided. *See* 537 F.3d 981, 991-92 (10th Cir. 2008). The law was clear at the time Respondents approved the project that all units of a project area must undergo some sort of environmental analysis. No legal justification existed at the time to support a different result.

*Second*, the Court agrees with Petitioners that Respondents' position—*i.e.*, that the EA adequately laid out a mitigation plan to reclaim compacted soils to comply with NFMA, was unreasonable.  (ECF No 77 at 5.)  Although the EA mentions use of a winged subsoiler to return soil-compaction levels to below 15%, as the Court found, the

EA did not contain "a sufficiently detailed plan for actually using the subsoiler" because the EA only "briefly state[d] its basic plan." (ECF No. 53, at 13-14.) Indeed, the Court identified as "the fundamental problem" with the EA, "its *cursory* discussion of the reclamation activities." (*Id.* at 13.) (*emphasis added.*) The Court ultimately concluded that "such undetailed statements" were inadequate to demonstrate the efficacy of the agency's reclamation plan and found against Respondents on this issue. (*Id.* at 14.) (*emphasis added.*)  The Court's identification of a laundry list of unanswered questions regarding the use of the winged subsoiler underscores the EA's deficient discussion.[2] (*Id.*)

Third, the EA provided an inadequate basis to ensure that the project area would be *restocked* within five years after harvest, as required by NFMA and the Forest Plan. (ECF No. 53, at 17-18); *see* 16 U.S.C. § 1604(g)(3)(E)(ii) (requiring Forest Service to "insure that timber will be harvested from National Forest System land only where… there is assurance that such lands can be adequately restocked within five years after harvest").  Specifically, Respondents did not adequately assess the impacts of the spruce budworm infestation on regeneration.  (ECF No. 53, at 19.)  The Court found Respondents' arguments on this issue to be "*unavailing.*" (*Id.*) (emphasis added.)  The EA merely asserted that thinning of the forest by logging could "improve" regeneration; but, as the Court found, such "vague statements" did not indicate that the regeneration requirement would be met.  (*Id.*)  This further reinforces the view that,

---

[2]  Respondents also contend that there was existing case law to provide cover for their non-compliance with the NFMA *et al.*  But, as Petitioners' rightly point out, that case law was distinct from issues in the present suit, and provides no reasonable basis for the purposes of the defeating Petitioners' Motion.

*inter alia*, Respondents had no reasonable basis in fact or law to pursue the litigation it did. *Hackett* 475 F.3d at 1174 (stating that fees should be awarded where the government's underlying action was unreasonable "even if the government advanced a reasonable litigation position").

Fourth, the Court agrees with Petitioner's position that Respondents' argument suffered generally from an over-reliance on the view that the Court should defer to the agency's expertise. (ECF No. 77 at 10.) Rather than explain how the EA and FONSI conformed to the relevant statutes, Respondents repeatedly emphasized the "high degree of deference" that ought to be accorded to an agency's determination.[3] (*See* ECF No. 26, at 8-9, 15-16, 20.) Respondents' attempt to shield their actions with appeals to deference underscores the weakness of their position both factually and legally. This, again, does not demonstrate substantial justification of Respondents' litigation position. The Court finds as much.[4]

Accordingly, because of the above reasons, the Court finds that Respondents' litigation position was not substantially justified to advance the litigation. This requirement has been met. *Pierce*, 487 U.S. at 565; *see* 28 U.S.C. § 2412(d)(1)(A).

---

[3] While a reviewing court's role may be narrow, especially where an agency is interpreting scientific data, the agency must still "examine[] the relevant data and articulate[] a satisfactory explanation for its decision, including a rational connection between the facts found and the decision made." *Colo. Wild v. U.S. Forest Serv.*, 435 F.3d 1204, 1213 (10th Cir. 2006). In other words, a court cannot defer when there is no analysis to defer to, and a court cannot accept at face value an agency's unsupported conclusions.

[4] The Court notes that the reasons above supporting Petitioners' position are just a cross-section of the many cogent arguments made by Petitioner's Motion. (ECF No. 77 at 3-10.) The case on the merits was lengthy and complex. For the purposes of brevity, the Court will not address Petitioners' remaining arguments but will incorporate same into this Order with respect to the substantially justified issue.

3.    Special Circumstances

With respect to the third requirement, a federal court should deny fees under EAJA where "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). While "[t]here is a dearth of case law interpreting the 'special circumstances' exception of the EAJA," *Murkeldove v. Astrue*, 635 F.3d 784, 794-95, (5th Cir. 2011), it has been interpreted to "'explicitly direct[] a court to apply traditional equitable principles in ruling upon an application for counsel fees.'"  *United States v. 27.09 Acres of Land Situated in the Town of Harrison*, 43 F.3d 769, 772 (2d Cir. 1994); *see Murkeldove*, 635 F.3d at 795 (stating "[the 'special circumstances' provision] gives courts discretion to deny awards where equitable considerations dictate an award should not be made'").

While the parties cite no Tenth Circuit authority on the third requirement, the Court views *Harrison,* 43 F.3d 769, as persuasive, and illustrates the types of factors that constitute special circumstances under the EAJA.  In that case, the district court found that the fees sought were expended during a "discrete early phase of the litigation" during which the Association achieved nothing but its own intervention, and that the Association's efforts in the later, productive phase of the litigation were "marginal, duplicative and unnecessary" and are *not* recoverable under EAJA.  *Id.*  The Second Circuit affirmed.  *Harrison,* 43 F.3d at 770-71; see 28 U.S.C. § 2412(d)(1)(A).

As demonstrated in *Harrison*, the facts relevant to the third requirement must be "special" to meet the statutory test.  The Court finds that the third requirement should be read narrowly because, (1) if the meaning of the term, special, is given too broad a meaning, it would subsume the purpose of the EAJA that allows for attorney's fees where a plaintiff prevails on the merits.  Indeed the first requirement ("prevailing party")

8

would be swallowed by the third requirement ("special circumstances") if the latter were given too broad a construction. *Cf. Shalala*, 509 U.S. at 302; and, (2) by reading the third requirement narrowly, the EAJA analysis does not overlap too deeply into the discretionary analysis of reasonableness under *Hensley* analysis. 461 U.S. at 435. [5]

Here, the Court finds that the special circumstances requirement is not met. First, the Court finds that Respondents do not draw enough similarities between the facts of *Harrison* with the instant case.  Indeed, Respondents fail to point to any 'special' circumstance of that nature so to deny attorney's fees. This cuts against Respondents' reliance on that case.

Second, Respondents fail to appreciate that Petitioners prevailed on the merits. They were successful on both the NFMA and NEPA claims—and obtained full relief. To then deny Petitioners the right to attorneys' fees when the EAJA expressly provides for it could lead to results where attorneys' fees would never be granted when a party prevailed.  This defeats the purpose of the statute.  *Cf. Harrison,* 43 F.3d at 774 (stating whether the plaintiff was unsuccessful on any claim comports with the general case law regarding attorney's fee awards, and is "particularly appropriate where a court is balancing the equities under the "special circumstances" section of the statute.")

Third, the Court rejects Respondents contention that Petitioners made no good

---

[5]  In *Harrison,* 43 F.3d at 772, and in looking to the equities, examined Supreme Court cases that address the reasonableness of attorneys' fees, citing *See Hensley*, 461 U.S. at 433. Notwithstanding the partial overlap, the Court notes that the EAJA inquiry, and the reasonableness inquiry, are typically considered separate analyses. While there is some degree of overlap, it is important to remember that *had* Respondents been successful on the EAJA's third factor, the Court would *not* have considered the reasonableness of the attorneys' fees. Indeed, such analysis would have been foreclosed.  The Court finds the opposite to be true as outlined in the reasoning above.

faith effort to eliminate unnecessary or duplicative fees.[6]  In making this argument, Respondents fail to credit the statement in Mr. Harris' declaration explaining that he "removed hours spent on activities, mainly education, that are not directly attributable to [Petitioners'] successful prosecution of this action." (*See* Harris Decl. ¶ 13.) Petitioners' documentation also informs the Court as to the qualifications and role of each individual for whom fees are sought.  (*Id.* ¶¶ 10-12.)   This is not demonstrative of bad faith, and does not trigger the special circumstances exception.

In sum, Petitioners are entitled to an award of reasonable attorneys' fees because: (1) they are "prevailing parties" in this action; (2) the government's position was not substantially justified; and (3) there are no special circumstances that would make an award unjust.  28 U.S.C. § 2412(d)(1)(A) (2006).  Accordingly, the Court must next address whether the fees requested by Petitioners are reasonable.[7]

### B.    Reasonableness of the Fees: Petitioners are Entitled to an Award of Discounted Fees

The starting point for calculating reasonable attorney's fees is determining the reasonable hourly rate multiplied by the number of hours reasonably expended.[8]

---

[6] The Court notes that Respondents rely on *Williams*, 113 F.3d at 1301, regarding the good faith requirement (prong (1), but they fail to address to address prong 2 — *i.e.* whether Petitioners failed to reduce time on unsuccessful claims.  Respondents lack of arguments on this point reinforces the result against them on the special circumstances point.

[7] Note the parties did not dispute the fourth requirement—*i.e.*, that the fee request must be made within 30 days of entry of final judgment, supported by an itemized statement.  *See Commissioner of the I.N.S.* 496 U.S. at 158.

[8] Typically, however, the "American Rule"  provides that "the prevailing litigant is ordinarily not entitled to reasonable attorney's fees." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975).

*Hensley*, 461 U.S. at 433;  *Malloy*, 73 F.3d at 1017-18.[9]  Assessment of attorney's fees is a discretionary one; ever more so given the district court's understanding of the litigation and the "desirability of avoiding frequent appellate review of what are essentially factual matters."  *Hensley,* 461 U.S. at 433.  Importantly, as here, a district court "need not identify and justify every hour allowed or disallowed" with respect to legal services rendered.  *Malloy*, 73 F.3d at 1018.  Doing so would only run counter to the "Supreme Court's warning that a request for attorney's fees should not result in. . . major litigation."[10] *Id.*

      1.    <u>The Hourly Rates</u>

        *a.    Law Students*

Hotly disputed in this case are the hourly rates for work performed by law students at the Environmental Law Clinic of University of Denver, Sturm College of Law.  Petitioners request hourly rates of $130 for 2008-2010 and $135 for 2010-2011 for work performed by law students involved in this case.  A table in Petitioners' Motion provides a breakdown of the relevant students' hours in the relevant year.  (ECF No. 73 at 4.)

---

[9]  "Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee." *Hensley*, 461 U.S. at 433. Indeed, in some cases of "exceptional success, an enhanced award may be justified." *Id.*  For reasons that are discussed below, this case does not fall into the exceptional category, but the result, in the Court's view, is not too far away given that much of the work was achieved by law students under the supervision of clinical professors.  But, because much of the work was done by law students, the rate of hours and the number of hours expended must be reduced.

[10]  Notwithstanding this, the Court does note that the matter involved complex issues regarding the environmental assessments going to both soil compaction and regeneration. Thus the arguments, going to the threshold issue of whether Respondents' action was substantially justified, has been addressed at some length preceding the costs issue.

Under the EAJA hourly rates "shall not be awarded in excess of $125 per hour unless the court determined that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A).  It is Petitioners' burden to prove the rates being sought.  *See, e.g., Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (identifying that burden is on the fee applicant to prove the requested hourly rates are reasonable); *LeRoy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir.1990).

Here, Petitioners' seek to exceed the statutory rate ($125 per hour) for work from law students at the clinic.  While the Court has reviewed the impressive post-graduation credentials of the law students involved in this matter, the relevance of their post-graduation credentials must be balanced against their (1) level of experience at the time they commenced the litigation itself, and (2) the experience garnered during same.  Further, and while Mr Harris' declaration states that he spoke with other attorneys practicing in the Denver Metro area, indicating that the rates were reasonable (ECF No. 73 at 1), the Court finds that to obtain a rate above $125 per hour requires heightened specificity to make good the claim that law students are working above the standard EAJA rate (*i.e.* at $130-135 per hour).   *See Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (stating that where there is little or no evidence of local hourly rates for law students, "a district judge may consider his or her own knowledge of prevailing market rates as well as other *indicia* of a reasonable market rate")

In determining a reasonable rate in this case, the Court finds that law students' efforts—under the supervision of qualified lawyers—were commendable.  This goes towards justifying a substantial rate towards that of $125 per hour.  Some law students

dedicated over 250 hours on this matter.  (ECF No. 73 at 4.)   For these students, the

Court infers that this would have heightened their efficiency as the more time they

spent on the matter, particularly as matter got more complex.  This warrants a higher

hourly rate.  On the flip-side, it follows that students who worked less than 250 hours

would not have reached the same level of efficiency as those who worked above this

threshold.  (*Id.*)  This warrants heavier discounting of their rate.  But the Court need not

parse these differences with a fine-tooth comb.[11]  Rather, and in the Court's discretion,

a rate reduction to $118 per hour seems sensible to spread across all law

students—particularly given the complex legal issues and administrative record in suit.

Indeed, it is the complexity of the matter, in the totality, that reflects the modest

reduction in the law student hourly rate as requested.[12]

### b.    *Attorney* rate

With respect to the attorneys who oversaw the success of this matter, the Court

reduces their rates downward across each to $175 per hour.  In the Court's view, this

minor discount is reflective of more reasonable fees for the purposes of the analysis

notwithstanding the base rate of $125 per hour, plus costs of living adjustments as

permitted under 28 U.S.C. § 2412(d)(2)(A).  Importantly, the Plaintiff's requested rate is

supported by evidence proffered by Mr. Harris regarding CPI-U for the Denver-Boulder

Metropolitan area.  (ECF No. 73-3, Ex. H.) The Court finds such evidence persuasive.

Mr. Harris also notes that he was involved in comparable litigation to this case, where

---

[11]  *See*, *Fox v. Vice*, --- U.S. ----, 131 S.Ct. 2205, 2217(2011) (stating that trial courts need not, and indeed should not, "become green-eyeshade accountants".)

[12]  The Court notes that the $118 per hour rate applies across all of the students.

the attorneys (including Mr. Harris himself) were awarded rates between $270-410. *Friends of Animals v. Salazar*, 696 F.Supp.2d 16, 20 (D.D.C.2010). While Plaintiff does not seek rates of this magnitude, the rates do reflect the upper end that may be awarded in EAJA cases, which contrasts with the modest rate increase in this case.

2.   Reasonable Hours of Law Student and Attorneys' Time

The general rule, therefore, is that hours are compensable under EAJA so long as they are "reasonably expended" and necessary or useful for prosecution of the case. *See Blum*, 465 U.S. at 901; *Hensley*, 461 U.S. at 434; *Commissioner v. Jean*, 496 U.S. at 161 (district court's task in determining fees under EAJA is the same as that described in *Hensley*, a civil rights case).[13] Thus, to determine the reasonable number of hours spent on the litigation, the applicant must exercise the same "billing judgment" as would be proper in setting fees for a paying client. *Hensely* 461 U.S. 424, 433-4; *Malloy*, 73 F.3d at 1018. Importantly, "hours that are *not* properly billed to one's client are also not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. 424, 433-4 (*quoting Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (*en banc*)). Counsel must, therefore, make a good faith effort to exclude hours that are "excessive, redundant or otherwise unnecessary." *Id.*

Moreover, a district court "should approach the reasonableness inquiry much as

---

[13] A district court must determine whether a petitioner has met its burden to establish that the hours spent in representation were "reasonably expended." *See Blum*, 465 U.S. at 901; *Hensley*, 461 U.S. at 437; see also 28 U.S.C. § 2412(d)(2)(A). Factors to consider in determining a reasonable award are: (1) whether the tasks being billed "would normally be billed to a paying client," (2) the number of hours spent on each task, (3) "the complexity of the case," (4) "the number of reasonable strategies pursued," and (5) "potential duplication of services" by multiple lawyers. *Ramos v. Lamm*, 713 F.2d 546, 553-54 (10th Cir. 1983). The Court notes that while it may have not expressly addressed each of these factors, it has considered them in totality.

a senior partner in a private law firm would review reports of subordinate attorneys when billing clients." *Rodman v. Astrue*, 2012 WL 95209 (D. Colo. Jan. 12, 2012) (quotation marks omitted).  However, "unlike a law clerk in a law firm, which must justify its bills to its clients, there is no similar economic restraint for law student research in a law school clinical setting."  *See Nkihtaqmikon v. Bureau of Indian Affairs*, 723 F. Supp. 2d 272, 282 (1st Cir. 2010).[14]

Here, Respondents contend that Petitioners' time was excessive as a whole because it required 1156.5 hours of student time and approximately 235 hours of attorney time.  (ECF No. 78 at 14.)  Respondents contend that because Petitioners spent nearly three times Respondents' hours, the number of hours expended by Petitioners should be significantly reduced.  But this argument misses the mark.  It fails to address the simple point that it was Petitioners who were ultimately successful in this action.  Without such acknowledgment, Respondents fail to appreciate that one of the contributing reasons why Petitioners were successful was because they expended more hours than Respondents in preparing for this detailed and complex case.  Hard work does reap rewards.  This case is no exception.

a.    *Discounting of Specific Entries*

Notwithstanding the above, the Court does find that some discounting of the requested time is warranted.  Specifically, Respondents' brief provides a summary of certain fee entries that the Court considers excessive.  (ECF No. 78 at 17-18.) Although the Court does not address all of the pertinent entries, the following examples

---

[14] The Court finds some currency in this proposition, and views the number of law student hours through this lens.

are illustrative of the need to discount the fees that Petitioners ultimately seek:

- Approximately 195 hours for numerous people to review the Administrative Record (*i.e.*, again over one month of full time attorney work) for which they seek fees amounting to approximately $28,500. (*Id.* at 17.)

- Over 200 hours to prepare for and attend oral argument, including seven separate moot oral arguments that were quadruple billed by two attorneys and two students, for which they seek fees amounting to approximately $30,700. (*Id.* at 18)

- Approximately 85 hours which appears to be related to acquainting new students with the case due to the transition of students onto and off of the case consistent with the academic calendar. (*Id.*)

- Approximately 250 hours sought for intra-clinic meetings. (*Id.*)

The above work amounts to 730 hours. The Court finds the expenditure of this amount of time to be excessive, even in light of the commendable results that Petitioners achieved. The Court also finds it is "impractical to excise the particular offending billing entries", and will deduct these hours as a proportion of the student hours in the whole. *See San Luis Valley Ecosystem*, 2009 WL 792257, at *8 (*citing Ramos,* 713 F.2d at 553-54). Accordingly, the Court will reduce the amount of time it will compensate Petitioners for above law student work (730 hours) proportionally by 25%.

This means that 182.5 hours are deducted from the original student hour total

(1156.5 hours),[15] leaving a total of 974 law student hours.  *Ramos*, 713 F.2d at 553-54.

        b.    *Reduction of Settlement Hours*

Respondents contend that the Court must also discount the time expended on *any* unsuccessful settlement negotiations.  Specifically, Respondents contend that Petitioners are not entitled to fees for time spent on unsuccessful settlement negotiations.  *Cobell v.Norton*, 407 F. Supp. 2d 140, 156 (D.D.C. 2005) ("Petitioners' settlement efforts did not bear fruit; they cannot be compensated for that time").  Petitioners claim approximately 95 hours on the settlement efforts. (ECF No. 78 at 20.)  Respondents contend that all such hours should be excluded.

But while *Cobell* is persuasive authority, the Court rejects any construction of the rule that is couched in absolute terms—*i.e.*, a petitioner "cannot be compensated" *at all* for unsuccessful settlements.  This absolute rule does not square with the discretionary nature of assessing reasonable costs under *Hensely* 461 U.S. at 434.  Indeed, it would tend to discourage the pursuit of settlements on the part of petitioners knowing that such time may not be awarded fees under the EAJA.  *See Martinez v. United States*, 94 Fed. Cl. 176, 188 (Fed. Cl. 2010) (stating "a categorical rule against awarding fees expended during settlement would discourage the pursuit of settlements on the part of plaintiffs.")  Given that such an approach would poorly serve the public interest of promoting the voluntary resolution of disputes, to the extent *Cobell* can be read to categorically preclude the award of a reasonable amount of fees expended in the pursuit of good faith—but ultimately unsuccessful—settlement efforts, this Court

---

[15] *See* ECF No. 73 at 5 (providing a summary of the 1156.5 law student hours requested).

rejects that holding and will refuse to follow it.

In light of this, the Court finds that 25% of the hours that went towards settlement should deducted—*i.e.*, a total of 23.75 hours.  These hours are split between the Attorneys (13.75 hours) and the law students (10 hours).  Accordingly, for present purposes, the Court finds that a more reasonable expenditure of time on this matter is as follows:

- Attorney time: 221.45 hours.[16]

- Student time: 874 hours.

These figures are more reflective of what is reasonable in this case given the weighing of the complexity of the case against, *inter alia*, the duplicative work that exists in Petitioners' time sheets.  *Malloy*, 73 F.3d at 1018 (stating that the Court need not "justify every hour allowed or disallowed").

3.    <u>Summary of Figures</u>

In sum, the Court finds that a reasonable amount of time expended and rates are outlined below.  Not only do these figures reflect reasonable hours spent, but the rates conform with the complexity and success achieved by Petitioners in this matter. The Court finds that the total fees in this case are calculated as follows:

- Multiplying the attorney rate ($175 per hour) by the number of hours expended (221.45) amounts to **$38,753.75**

- Multiplying the student rate ($118 per hour) by the number of hours expended (874 hours) amounts to **$103,132**

This amount to total **$141,885.75,** reflecting the reasonable attorney's fees that

---

[16] *See* ECF No. 73 at 4 (providing a summary of the 235.2 attorney hours requested).

are awarded in this matter.

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that Petitioners' Motion for Attorney's Fees (ECF. No. 73) is GRANTED IN PART.  Petitioners are awarded a total amount of **$141,885.75** in attorney's fees.  The Motion is DENIED in all other respects.

Dated this 26th day of June, 2013.

BY THE COURT:

_____

William J. Martínez
United States District Judge